IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WANDA G. TAYLOR,                         :
                                         :
        Plaintiff,                       :
                                         :
              v.                         : Civil Action No. 03-814 JJF
                                         :
BRANDYWINE SCHOOL DISTRICT,              :
                                         :
        Defendant.                       :

_____

Wanda G. Taylor, Wilmington, Delaware.
<u>Pro</u> <u>Se</u> Plaintiff.

Natalie L. Palladineo, Esquire of WHITE AND WILLIAMS LLP,
Wilmington, Delaware.
Attorney for Defendant Brandywine School District.

_____

## O P I N I O N

.

October ___, 2005
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court is a Motion for Summary Judgment (D.I. 48) filed by Defendant Brandywine School District ("the School District"). For the reasons discussed, the Motion has been granted.

## BACKGROUND

This action involves allegations of racial discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et seq. ("Title VII"). Plaintiff, Wanda G. Taylor, alleges that she was subjected to discrimination and harassment during her employment as an Attendance/Guidance Secretary at Springer Middle School in the Brandywine School District in Delaware. Ms. Taylor further alleges that the School District retaliated against her for having earlier complained of discriminatory treatment by the School District, and that her retirement from the School District in March 2002 was the equivalent of a constructive discharge. Ms. Taylor is an African-American female. (D.I. 48 at A51.)

In order to understand Ms. Taylor's claims, a time line showing her career path and events relevant to her claims is helpful.

> 1972 - 1981   Ms. Taylor employed by New Castle County School District before it was partially apportioned into the Brandywine School District. (D.I. 50.)

1

| | |
|---|---|
| July 1, 1981 | Ms. Taylor begins her employment at Brandywine School District as a Clerk. (D.I. 48 at A61.) |
| February 15, 1985 | Ms. Taylor is promoted to Attendance Clerk.  (D.I. 50 at 1.) |
| July 1, 1990 | Ms. Taylor promoted to Secretary per recommendation of Dr. Frank Furgele, then Superintendent of the School District. (D.I. 50 at A38.) |
| August 23, 1995 | Ms. Taylor promoted to Attendance/Guidance Secretary at Springer Middle School.  (D.I. 48 at A62.) |
| May 2000 | Ms. Taylor sends letter to Ned Brown, then Principal of Springer Middle School, alleging disrespectful and discriminatory treatment by co-workers.  (D.I. 48 at A86-87.) |
| June 2000 | Ms. Taylor sends letter to Dr. Joseph P. DeJohn, then Superintendent of Brandywine School District, alleging discrimination with respect to promotion and pay.  (D.I. 48 at A88.) |
| On or before August 29, 2000 | Ms. Taylor meets with Dr. DeJohn, Michael Gliniak, the new Principal of Springer Middle School, and Donald Fantine, then Assistant Superintendent of Operations, to discuss her concerns.  (D.I. 48 at A90.)  Ms. Taylor is satisfied with the results of the meeting.  (D.I. 48 at A90.) |
| December 7, 2000 | Ms. Taylor receives bonus of 3% of the local portion of her annual salary for excellent attendance.  (D.I. 48 at A74.) |

| July 25, 2001 | Ms. Taylor receives a raise of $550.00 plus 3% of the local portion of her annual salary.  (D.I. 48 at A78.) |
| December 4, 2001 | Ms. Taylor receives bonus of 3% of the local portion of her annual salary for excellent attendance.  (D.I. 48 at A77.) |
| late 2001 - early 2002 | Ms. Taylor becomes aware of an alleged incident of sexual harassment by a teacher toward a student.  (D.I. 48 at A115-120.)  Ms. Taylor did not immediately report the incident.  (D.I. 48 at 112-120.) |
| March 2002 | The School District decides to terminate Ms. Taylor's employment due to her failure to report the sexual harassment incident and to cooperate in the ensuing investigation.  (D.I. 50 at 7, A125.) |
| March 14, 2002 | Ms. Taylor elects to retire from the School District, effective March 15, 2002.  (D.I. 50 at A122.) |
| April 19, 2002 | Ms. Taylor files EEOC charge with Delaware Department of Labor ("DDOL"), alleging racial discrimination and retaliation.  (D.I. 48 at A83.) |
| October 7, 2003 | Ms. Taylor files Complaint alleging claims of racial discrimination, retaliation, constructive discharge, and hostile work environment. |

### STANDARD OF LAW

**I. Summary Judgment**

In pertinent part, Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment

3

if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. Valhal Corp. v. Sullivan Assocs., Inc., 44 F.3d 195, 200 (3d Cir. 1995).  However, a court should not make credibility determinations or weigh the evidence.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  To properly consider all of the evidence without making credibility determinations or weighing the evidence, a "court should give credence to the evidence favoring the [non-movant] as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000).

To defeat a motion for summary judgment, the non-moving party must:

> do more than simply show that there is some
> metaphysical doubt as to the material facts. . . .  In
> the language of the Rule, the non-moving party must
> come forward with "specific facts showing that there is
> a genuine issue for trial."

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). However, the mere existence of some evidence in support of the nonmovant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Thus, if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted. Id.

DISCUSSION

## I.   Whether Ms. Taylor's Claims Are Time-Barred

As a threshold matter, the School District contends that the Court should dismiss portions of Ms. Taylor's Title VII claims as untimely. Specifically, the School District contends that Ms. Taylor's claims based on events occurring prior to February 13, 2001 are time-barred pursuant to 42 U.S.C. § 2000e-5(e).

Where, as here, a plaintiff has initiated parallel proceedings with a state agency for violations of Title VII, the plaintiff has 300 days from the occurrence of the alleged unlawful act to file a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(e). In this case, Ms. Taylor filed her EEOC charge on April 19, 2002. (D.I. 48 at A51.) Thus, Ms. Taylor's claims based on events occurring before June 23, 2001, are time barred. Accordingly, the Court will proceed to consider each of Ms. Taylor's claims to the extent that they are based on events

5

occurring on or after June 23, 2001.[1]

## II.  Whether The School District Is Entitled To Summary Judgment On Ms. Taylor's Claim Of Racial Discrimination

By its motion, the School District contends that Ms. Taylor

has failed to establish a _prima_ _facie_ case of discrimination, and

---

[1]     To the extent Ms. Taylor contends that her claims are not time-barred because they are based on on-going events, Ms. Taylor must establish that her claims constitute a continuous violation.  To demonstrate a continuous violation, the plaintiff must show that one act occurred within the limitations period. Rush v. Scott Speciality Gases, Inc., 113 F.3d 476, 481 (3d Cir. 1997).  Then the plaintiff must show that the alleged discrimination is more than an isolated or sporadic event, but that it is continuing pattern of discrimination.  Factors relevant to this inquiry include:  (1) whether the alleged acts involve the same type of discrimination; (2) the frequency of the alleged acts; and (3) the degree of permanence.  In considering the third factor, the court should consider "whether the act has a degree of permanence which should trigger the employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate."  Id. at 482.

        To the extent Ms. Taylor's allegations pertain to her pay and job duty assignments, events which are on-going in nature, the Court concludes that those acts are acts of sufficient permanence and expected adverse consequence regardless of an intent to discriminate, such that they should have been sufficient to alert a reasonable person to assert his or her rights.  Id. at 483 (holding that failure to promote claim was barred by 300 day limitation period, because plaintiff failed to allege a failure to promote within the limitations period); Hicks v. Big Brothers/Big Sisters of America, 944 F. Supp. 405, 407 (holding that allegations related to discriminatory pay did not fall into continuous violation theory).  Thus, the Court concludes that, to the extent that Ms. Taylor's claims relate to the time period before June 23, 2001, they are time barred. Accordingly, the Court will only consider Ms. Taylor's claims to the extent that they can be said to have occurred within the limitations period.

6

therefore, the School District is entitled to summary judgment on Ms. Taylor's claim of racial discrimination.  Specifically, the School District contends that Ms. Taylor cannot demonstrate (1) that she is qualified for the position of Attendance/Guidance Secretary at Springer Middle School, or (2) that she suffered an adverse employment action.  In the alternative, the School District contends that even if Ms. Taylor can make these prima facie showings, Ms. Taylor has failed to rebut the legitimate non-discriminatory reasons offered by the School District for the actions it has taken with respect to Ms. Taylor's position.

Discrimination claims based on pretext are analyzed under the framework set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[2] Under this burden-shifting framework, the plaintiff must first establish a prima facie case of discrimination.  Reeves, 530 U.S. at 142.  Once a prima facie case is established, the burden of production shifts to the defendant to produce a legitimate nondiscriminatory reason for the adverse employment action taken against the plaintiff.  Id.  Because the burden of persuasion

---

[2]      Title VII cases are analyzed under two frameworks, the "mixed motive" analysis and the "pretext" analysis.  In "mixed motive" cases, the plaintiff is able to adduce direct evidence of discrimination, that is "evidence which, if believed proves the fact without reference or presumption."  Nixon v. Runyon, 856 F. Supp. 977, 983 (E.D. Pa. 1994) (citations omitted).  In this case, Ms. Taylor offers no direct evidence of discrimination by the School District, and therefore, Ms. Taylor's claims will be reviewed by the Court using the pretext analysis.

7

does not shift at this stage, the employer's legitimate nondiscriminatory reason is not evaluated insofar as its credibility is concerned.  Id.  Once a legitimate nondiscriminatory reason is proffered, the presumption of discrimination created by the prima facie case "drops away."  Id. At this point, the plaintiff must proffer sufficient evidence for the fact finder to conclude by a preponderance of the evidence that the legitimate nondiscriminatory reasons offered by the employer were not true, but were a pretext for unlawful discrimination.  Although the prima facie case and the inferences drawn therefrom may still be considered at the pretext stage, this evidence must be combined with sufficient evidence to permit the trier of fact to conclude that the employer intentionally discriminated against the plaintiff.  Id.  To this effect, it is not enough for the fact finder to disbelieve the defendant's legitimate nondiscriminatory reason.  Rather, even if the fact finder finds the defendant's reason unpersuasive or contrived, there must still be sufficient evidence for the fact finder to believe the plaintiff's explanation for the adverse action, i.e. that the defendant intentionally discriminated against the plaintiff.  Id. at 146-148.

To establish a prima facie case of discrimination, a plaintiff must demonstrate that (1) he or she is a member of a protected class; (2) he or she is qualified for the sought after

8

position; (3) he or she suffered an adverse employment action;
and (4) similarly situated non-members of the protected class
were treated more favorably than he or she, or the circumstances
of his or her termination give rise to an inference of
discrimination. <u>Pivirotto v. Innovative Sys., Inc.</u>, 191 F.3d
344, 356 (3d Cir. 1999).  Reviewing the evidence offered by Ms.
Taylor in the light most favorable to Ms. Taylor, as the non-
movant, the Court concludes that Ms. Taylor has not offered
sufficient evidence to establish a <u>prima facie</u> case of racial
discrimination.  Specifically, the Court concludes that Ms.
Taylor has not established that similarly situated individuals
were treated more favorably than she was treated, or that the
adverse employment actions she allegedly suffered give rise to an
inference of racial discrimination.  Ms. Taylor contends that the
fourth prong of the <u>prima facie</u> case is met because no white
employees were asked to perform the duties of two positions at
the School District.  However, Ms. Taylor offers no evidence to
support her allegation.  Ms. Taylor also alleges that she
suffered harassment, disparate treatment, and discrimination with
respect to promotions and salary; however, Ms. Taylor offers no
evidence to substantiate her claims.[3]  Accordingly, the Court

---

[3]     Ms. Taylor offers the statement from Rossman Thompson,
her co-worker, that he witnessed another co-worker, Janee Larson
tell Ms. Taylor, to "shut up, you don't know what you're talking
about."  (D.I. 48 at A121.)  The Third Circuit has recognized
that not every insult is sufficient to give rise to a claim of

concludes that Ms. Taylor has failed to establish a <u>prima</u> <u>facie</u> case of racial discrimination.

In the alternative, however, even if Ms. Taylor has established the elements of a <u>prima</u> <u>facie</u> case, the Court concludes that the School District is entitled to summary judgment.  The School District has come forward with a legitimate non-discriminatory reason for the alleged adverse employment actions taken against Ms. Taylor.

With respect to Ms. Taylor's claims related to her salary, the School District has identified evidence that Ms. Taylor's salary was determined according to the School District's salary schedule for secretaries, which included the state minimum salary required by 14 Del. Code §§ 1303 and 1308, the state training stipend set forth in 14 Del. Code § 1309(b), local salary, attendance, longevity, and building stipends authorized by the Board of Education pursuant to 14 Del. Code § 1304.  (D.I. 48 at A52-79.)  Further, the School District has produced evidence that in fiscal years 2000-2001 and 2001-2002, Ms. Taylor was the highest paid Attendance Guidance Secretary of all similarly situated Attendance/Guidance Secretaries.  (<u>Id.</u>)

With respect to the School District's decision to terminate Ms. Taylor's employment, the School District offers evidence that

employment discrimination, <u>see</u> <u>e.g.</u>, <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1297 (3d Cir. 1997), and further, Ms. Taylor has presented no evidence that this statement was based on a discriminatory animus.

10

Mr. Gliniak and his superiors concluded that Ms. Taylor violated
School Board Policy 08.2 and state law by not promptly reporting
a student's complaint of sexual harassment by a teacher. (D.I. 48
at A112-120.)   Further, the School District presents evidence
that Ms. Taylor refused to cooperate with the School Board or the
Delaware State Police in their investigation into the matter.
(Id.)   The School District also offers evidence that violation of
Board Policy 08.2 and insubordination during the investigation of
a sexual harassment claim are grounds for termination of
employment.   (Id.)

Based on the foregoing evidence proffered by the School
District, the Court concludes that the School District has
offered legitimate, non-discriminatory reasons for the alleged
adverse employment actions against Ms. Taylor.   At this juncture,
Ms. Taylor must come forward with sufficient evidence for a
reasonable fact finder to conclude by a preponderance of the
evidence that these legitimate nondiscriminatory reasons are a
pretext for intentional, unlawful discrimination.   As the Third
Circuit has explained:

> [T]o defeat summary judgment when the defendant answers
> the plaintiff's *prima facie* case with legitimate, non-
> discriminatory reasons for its action, the plaintiff
> must point to some evidence, direct or circumstantial,
> from which a fact finder could reasonably either (1)
> disbelieve the employer's articulated legitimate
> reasons; or (2) believe that an invidious
> discriminatory reason was more likely than not a
> motivating or determinative cause of the employer's
> action.

11

Jones v. Sch. Dist. of Phila., 198 F.3d 403, 413 (3d Cir. 1999)
(quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994);
Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1067 (3d
Cir. 1996)).  Ms. Taylor can satisfy her burden at this juncture
by showing that the School District's proffered reasons are weak,
incoherent, implausible, or so inconsistent that "a reasonable
fact finder could rationally find them unworthy of credence."
Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108-09 (3d
Cir. 1997).  She can also meet this burden with evidence that
"the employer's articulated reason was not merely wrong, but that
it was 'so plainly wrong that it could not have been the
employer's real reason.'"  Jones, 198 F.3d at 413 (quoting
Keller, 130 F.3d at 1109).

     In response to the School District's evidence, Ms. Taylor
offers (1) a copy of the Brandywine School District Board of
Education's policy on investigating and reporting criminal or
fraudulent actions by District employees, agents or contractors
(D.I. 50 at A47); (2) a copy of the Brandywine School District
Board of Education's policy statement on harassment of employees
(D.I. 50 at A48); (3) a copy of the Brandywine School District
Board of Education's policy statement on termination rules for
non-professional employees (D.I. 50 at A49); (4) a copy of the
Brandywine School District Board of Education's policy statement
on employee code of ethics (D.I. 50 at A50); (5) a copy of the
Brandywine School District Board of Education's policy statement

12

on harassment of students by employees (D.I. 50 at A51); and (6)
a copy of the Brandywine School District Board of Education's
policy statement on civility (D.I. 50 at A56.).  Ms. Taylor also
reiterates her unspecified allegations of harassment.  However,
Ms. Taylor offers no evidence to support her non-specific
allegations.  (D.I. 48 at A44-46, 48.)  Reviewing the evidence
offered by Ms. Taylor, the Court concludes that Ms. Taylor has
not produced sufficient evidence from which a reasonable fact
finder could conclude that the School District's proffered
reasons for the alleged adverse employment action were a pretext
for intentional discrimination.  Accordingly, the Court will
grant the School District's Motion For Summary Judgment as to Ms.
Taylor's claims of racial discrimination.

### III. Whether The School District Is Entitled To Summary Judgment On Ms. Taylor's Claim Of Constructive Discharge

The School District also contends that it is entitled to
summary judgment, because Ms. Taylor's claim of constructive
discharge fails as a matter of law.  The School District contends
that Ms. Taylor has offered no evidence that the atmosphere at
her place of employment was so unpleasant that a reasonable
person would have no choice but to resign.  In addition, the
School District contends that even if Ms. Taylor can demonstrate
some harassment or offensive conduct, her constructive discharge
claim fails, because such conduct does not amount to intolerable
conduct and there is no causal connection between the alleged

13

conduct and Ms. Taylor's retirement.

To establish a <u>prima</u> <u>facie</u> case that her retirement from the
School District resulted from a constructive discharge, Ms.
Taylor must show that the conduct complained of would have the
foreseeable result of creating working conditions that were so
unpleasant or difficult that a reasonable person in her position
would resign.  <u>See</u> <u>Schafer v. Board of Public Educ.</u>, 903 F.2d
243, 249 (3d Cir. 1990).  The alleged discrimination must surpass
"a threshold of 'intolerable conditions.'"  <u>See</u> <u>Duffy v. Paper</u>
<u>Magic Group, Inc.</u>, 265 F.3d 163, 169 (3d Cir. 2001); <u>Connors v.</u>
<u>Chrysler Fin. Corp.</u>, 160 F.3d 971, 976 (3d Cir. 1998).
Intolerability is assessed by the objective standard of whether a
"reasonable person" in the employee's position would have felt he
or she would have had no choice but to resign.  <u>Id.</u> at 976.

In support of her constructive discharge claim, Ms. Taylor
contends that she was asked to perform the duties of two
positions--a clerk and a secretary--since 1998, and that no white
employee performed the duties of two positions.  (D.I. 50,
Statement of Facts.)  In support of her contention, Ms. Taylor
offers a document entitled Attendance/Guidance Secretary
Expectations that describes what is expected from a person
performing that position.  (D.I. 50 at A40.)  However, Ms. Taylor
offers no evidence that such expectations were in any way race
related.

Ms. Taylor also contends that her work conditions were

14

intolerable, because Mr. Gliniak maintained records with regard
to Ms. Taylor's work performance that were never provided to Ms.
Taylor.  (D.I. 50 at A91.)   If, as Ms. Taylor contends these
records were never provided to her, it is difficult for the Court
to conclude that the presence of these records created an
environment that was so intolerable that a reasonable person
would have no choice but to resign.

Considering the evidence offered by Ms. Taylor, the Court
concludes that Ms. Taylor has failed to offer evidence that
demonstrates constructive discharge.  A high level of harassment
or offensive conduct is needed to support a claim of constructive
discharge.  Barkauskie v. Indian River School District, 951 F.
Supp. 519, 529 (D. Del. 1996).  Ms. Taylor alleges that she was
given additional job responsibilities and that her complaints
were ignored.  Ms. Taylor has not provided any affidavits or
deposition testimony from witnesses to corroborate her
allegations of an intolerable environment, and in the Court's
view, the conduct alleged is insufficient to demonstrate that the
circumstances and atmosphere of her employment were so unpleasant
that a reasonable person would have no choice but to resign.
Accordingly, the Court will grant summary judgment in favor of
The School District on Ms. Taylor's claim for constructive
discharge.[4]

---

[4]    In its Opening Brief in support of its Motion For
Summary Judgment, the School Board addressed separately a claim

15

IV.  **Whether The School District Is Entitled To Summary Judgment On Ms. Taylor's Retaliation Claim**

The School District also contends that it is entitled to summary judgment on Ms. Taylor's claim of retaliation. Specifically, the School District contends that Ms. Taylor has offered no evidence of an adverse action taken by the School District after or contemporaneous with Ms. Taylor's salary complaints in 2000 or her complaints about favorable treatment of co-workers.  The School District contends that Ms. Taylor has not adduced any evidence of discriminatory conduct or of an adverse employment action by the School District that was causally connected to her complaints.

In the Third Circuit, analysis for a claim of retaliation proceeds in three stages.  First, the plaintiff must establish a prima facie case of retaliation.  If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Williams v. Philadelphia Housing Authority Police Dept., 380 F.3d 751, 760 (3d Cir. 2004). Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the allegedly legitimate reasons offered by the

---

for hostile work environment.  Because the Court finds that Ms. Taylor's hostile work environment claim overlaps with her claim of constructive discharge, the Court will not separately address a hostile work environment claim.

16

defendant were not its true reasons, but were a pretext for discrimination.  Id.

To establish a prima facie case of retaliation, a plaintiff must show "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997).

Ms. Taylor alleges that the School District retaliated against her by forcing her into retirement in March 2002, after she complained about her salary in July 2000.  While Ms. Taylor's complaints may be considered protected activity, the Court concludes that Plaintiff has failed to establish a causal connection between this activity and her alleged forced retirement.  The interval of time between the protected activity alleged and the alleged retaliation was nearly two years, and Ms. Taylor has not offered evidence of antagonism or retaliatory animus sufficient to link these events.

However, even if Ms. Taylor can show the elements of a prima facie case, the Court concludes that the School District has offered legitimate non-discriminatory reasons for their decision to terminate Ms. Taylor, which eventually resulted in Ms. Taylor's decision to retire.  The School District has a policy against failing to report a student complaint about sexual harassment.  Nothing in the record suggests that the School

17

District invoked this policy or inconsistently applied it to Ms. Taylor as a pretext for retaliation.  In addition, the failure to report sexual harassment is a violation of Delaware law, and Ms. Taylor has not demonstrated that the School District's decision to terminate her was the result of anything but these violations of school policy and state law.  Because there is no basis for a reasonable fact finder to conclude that the School District's nondiscriminatory reason is a pretext for retaliation, the Court will grant summary judgment in favor of the School District on Ms. Taylor's retaliation claim.

**CONCLUSION**

For the reasons discussed, the Court has granted the Motion For Summary Judgment (D.I. 36) filed by the School District with regard to all the claims contained in Ms. Taylor's Amended Complaint (D.I. 32).

An appropriate Order has been entered.

18
